312-09/EEL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
EVERSPEED ENTERPRISES LIMITED PTE. LTD.

                Plaintiff,                                **09 CV 1319 (LBS)**

   -against-

SKAARUP FORTUNE SHIPPING LTD. ,

                Defendant.
------------------------------------------------------------------x

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR COUNTER-SECURITY

                                                FREEHILL HOGAN & MAHAR, LLP
                                                Attorneys for Defendants
                                                80 Pine Street
                                                New York, NY  10005
                                                (212) 425-1900
                                                (212) 425-1901 fax

<u>Of Counsel</u>
Eric E. Lenck
Manuel A. Molina

NYDOCS1/333851.1

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

RELEVANT FACTS TO THE INSTANT MOTION ............................................................... 1

ARGUMENT .............................................................................................................................. 4


POINT I:
EVERSPEED SHOULD BE ORDERED TO PROVIDE
COUNTER-SECURITY TO SFS .............................................................................................. 4


POINT II:
SINGAPORE ARBITRATION PROCEEDINGS ON EVERSPEED'S
ORIGINAL CLAIM MUST BE STAYED PENDING
THE POSTING OF COUNTER-SECURITY ........................................................................... 7


POINT III:
THE COURT SHOULD VACATE THE ATTACHMENT AND DISMISS
THE COMPLAINT IF EVERSPEED FAILS TO POST
COUNTER-SECURITY AS DIRECTED ................................................................................. 9

CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

*Daeshin Shipping Co. Ltd. v. Meridian Bulk Carriers, Ltd.*,
No.05-7173, 2005 U.S. Dist. LEXIS 22409 (S.D.N.Y. Oct. 3, 2005)..............................8

*Dongbu Express Co. Ltd. v. Navios Corp.*,
944 F. Supp. 235 (S.D.N.Y. 1996)...........................................................................5

*Fednav Int'l Ltd. v. Sunwoo Merchant Marine Co. Ltd.*,
No. 07-3886, 2007 U.S. Dist. LEXIS 79685 (S.D.N.Y. Oct. 18, 2007).............................5

*Front Carriers, Ltd. v. Transfield ER Cape Ltd.*,
No. 07-6333, 2007 U.S. Dist. LEXIS 85177 (S.D.N.Y. Nov. 19, 2007)...........................4

*Pancoast Trading S.A. v. Eurograni S.r.l.*,
No.07-8581, 2008 U.S. Dist. LEXIS 4224 (S.D.N.Y. Jan. 22, 2008.............................5,6

*Result Shipping v. Ferruzzi Trading USA*,
56 F.3d 394 (2d Cir. 1995)........................................................................................4

*Sea Transport Contractors, Ltd. v. Industries Chemiques du Senegal*,
411 F. Supp. 2d 386 (S.D.N.Y. 2006)........................................................................7

*The Rice Co. v. Express Sea Transport Corp.*,
No. 07-7077, 2007 U.S. Dist. LEXIS 84300 (S.D.N.Y. Nov. 15, 2007)...........................4

*Verton Navigation Inc. v. Caribica Shipping Ltd.*,
*No. 90-6940* 1991 U.S. Dist. LEXIS 6722 (S.D.N.Y. May 1, 1991)............................5,6

*Voyager Shipholding Corp. v. Hanjin Shipping Co. Ltd.*,
539 F. Supp. 2d 688 (S.D.N.Y. 2008).....................................................................7,8,9

## PRELIMINARY STATEMENT

Defendant SKAARUP FORTUNE SHIPPING LTD. (hereinafter "SFS"), through its attorneys Freehill, Hogan & Mahar, LLP, respectfully submits this memorandum of law in support of its motion for an order, pursuant to Supplemental Admiralty Rule E(7)(a), directing: (a) the posting of counter-security by plaintiff EVERSPEED ENTERPRISES LIMITED PTE. LTD. ("Everspeed"); (b) a stay of the prosecution on the merits of Everspeed's claims and any additional attachments until such counter-security has been posted; and (c) the vacatur of Everspeed's attachment and Amended Verified Complaint if Everspeed fails to provide counter-security within ten days from the date of the Court's order.

## RELEVANT FACTS TO THE INSTANT MOTION

On or about March 9, 2008, Everspeed, as owner, entered into a maritime contract of charter party for the vessel M/T BUNG SAGA 9 with SFS, as charterer. SFS agreed to charter the vessel up to December 15, 2010, and to pay hire at the rate of $56,500 per day, payable every fifteen days in advance. (Affidavit of Manuel A. Molina, dated July 16, 2009 ("Molina Aff."), Exhibit A, Charter Party Clause 5.) Pursuant to the terms of the charter party, SFS had the right to terminate its agreement with Everspeed in the event that the BUNGA SAGA 9 suffered repair problems that forced the vessel to go off-hire for more than fifteen consecutive days provided no cargo onboard. (Molina Aff., Exhibit A, Rider Clause 65).

While under charter to SFS, the vessel failed to perform as warranted by Everspeed. The vessel experienced numerous repair problems, including but not limited to, engine immobilization, failure of its hydraulic system, and repeated breakdowns of its auxiliary engine. ("Molina Aff., Exhibit B, Verified Answer and Counterclaim.). The vessel's repair problems worsened in January 2009. When the BUNGA SAGA 9 departed from the Fazendinha pilot

station of the Amazon River and/or when it was transiting the Amazon River, its auxiliary engine suffered breakdowns. As a result, the vessel went off-hire on January 18 at 0418 hours local time on January 18, alternatively at 0912 hours local time on January 22, and remained off-hire until 0912 hours local time on February 6, 2009. Accordingly, the vessel was off-hire for more than fifteen consecutive days. Given that the vessel had been off-hire for more than fifteen consecutive days and there being no cargo onboard, SFS exercised its contractual rights and terminated the charter party on February 6. (Molina Aff., Exhibit A, Rider Clause 65; Exhibit B.)

Everspeed refused to accept SFS' right to cancel and deemed SFS to be in breach of the charter. Shortly thereafter, on February 18, 2009, Everspeed brought an *ex parte* application in this Court for the issuance of process of maritime attachment, pursuant to Supplemental Admiralty Rule B, against various defendants, including SFS.[1]  In support of the writ of attachment, Everspeed alleged that SFS had breached the charter party by failing to pay hire. Everspeed claimed damages in excess of $39 million, plus interest, costs and legal fees. This Court granted Everspeed's Rule B application on the same date it was filed, and authorized the Clerk to issue a writ of attachment against the property of SFS in excess of $49 million. On or about February 24, Everspeed restrained SFS' assets in the sum of $894,050.00. (Molina Aff., Exhibit D.)

The charter party provides that all disputes are to be resolved by arbitration in Singapore, pursuant to English law. On March 4, Everspeed appointed its arbitrator, with SFS nominating its arbitrator on March 18. Everspeed, however, has yet to submit its Claim Submission to the Singapore arbitration Tribunal.

---

[1] On April 13, 2009, the Court so ordered Plaintiff's Partial Voluntary Dismissal as to all named defendants except SFS. (Molina Aff., Exhibit C.)

SFS will present a full defense to Everspeed's claim asserting, *inter alia*, that pursuant to the explicit terms of the charter, SFS was lawfully entitled to terminate the charter because the BUNGA SAGA 9 remained off-hire on the Amazon River for more than fifteen consecutive days. In addition, SFS will assert a counterclaim for overpayment of charter hire in the amount of $1,608,523.66, plus, interest, costs and legal fees relating to the Singapore arbitration. The basis for such a counterclaim is that SFS, as a result of the various repair problems experienced by the vessel while the charter was in effect, was denied its contractually bargained right to use and operate the vessel. Because SFS timely paid hire in advance as required by the charter, the vessel's underperformance resulted in an overpayment of hire to Everspeed. In February 2009, SFS prepared a final Hire Statement it forwarded to Everspeed, which Hire Statement explicitly detailed both the occasions in which SFS was unable to use and operate the vessel and the manner in which SFS calculated the overpayment of hire. The Hire Statement establishes that SFS is entitled to a refund of charter hire paid to Everspeed in the sum of $1,608,523.66 (plus interest and costs). (Molina Aff., Exhibit B.)

Although this counterclaim has been asserted in the proceedings herein, SFS expressly reserves its right to arbitrate its counterclaim in Singapore, as per the terms of the Everspeed-SFS charter party. (Molina Aff., Exhibit B.) SFS intends to pursue its counterclaim in Singapore arbitration once Everspeed's submissions have been made in that arbitration.

Given that Everspeed has obtained security from SFS for its claim, SFS is now entitled, in turn, to obtain counter-security from Everspeed for its counterclaim. SFS, therefore, respectfully requests that the Court grant the within motion and order Everspeed to give counter-security on the basis of SFS' counterclaim.

## ARGUMENT

## POINT I

### EVERSPEED SHOULD BE ORDERED TO PROVIDE COUNTER-SECURITY TO SFS

Supplemental Admiralty Rule B, under which Everspeed proceeded against SFS, does not require the posting of security for costs or for counter-security in order to obtain an order of attachment in the first instance, but Supplemental Admiralty Rule E(7)(a) provides that such counter-security must be given if the Defendant asserts a counterclaim. Rule E(7)(a) provides as follows:

> When a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for damages demanded in the counterclaim unless the court for cause shown, directs otherwise. Proceedings on the original claim must be stayed until this security is given unless the court directs otherwise.

Although the rule is mandatory in form, the district courts retain discretion in deciding whether to grant counter-security. *Result Shipping v. Ferruzzi Trading USA*, 56 F.3d 394, 399-401 (2d Cir. 1995). The Second Circuit has held that the purpose of Rule E(7)(a) is to place the parties "on an equal footing" in regard to security but without imposing costs that might prevent a plaintiff from bringing suit. *Id.* Once a district court is satisfied that the counterclaim is "non-frivolous," it "need not probe more deeply into the strength of the counterclaim to grant counter-security." *The Rice Co. v. Express Sea Transport Corp.*, No. 07-7077, 2007 U.S. Dist. LEXIS 84300, *10 (S.D.N.Y. Nov. 15, 2007) (*citing Result Shipping*, 56 F.3d. at 399-400). *See also Front Carriers, Ltd. v. Transfield ER Cape Ltd.*, No. 07-6333, 2007 U.S. Dist. LEXIS 85177, *8-10 (S.D.N.Y. Nov. 19, 2007).

Here, it is undisputed that Everspeed has obtained security from SFS in the sum of $894,050.00 on its purported breach-of-contract claim. (Molina Aff., Exhibit D.) In addition, SFS has asserted a counterclaim for overpayment of hire which stems from the charter party relationship between the parties that is the focus of the underlying action and the Singapore arbitral proceedings. Pursuant to the plain wording of Rule E(7)(a), Everspeed should now be required to provide counter-security in favor of SFS in the full amount of its counterclaim (including interest and the legal costs and fees of arbitration), or $2,205,198.36.[2]

Under similar factual circumstances, courts of this District have readily awarded counter-security to the defendant. *Pancoast Trading S.A. v. Eurograni S.r.l.*, No.07-8581, 2008 U.S. Dist. LEXIS 4224 (S.D.N.Y. Jan. 22, 2008); *Verton Navigation Inc. v. Caribica Shipping Ltd.*, No. 90-6940, 1991 U.S. Dist. LEXIS 6722 (S.D.N.Y. May 1, 1991); *The Rice Co.*, 2007 U.S. Dist. LEXIS 84300; *Fednav Int'l Ltd. v. Sunwoo Merchant Marine Co. Ltd.*, No. 07-3886, 2007 U.S. Dist. LEXIS 79685 (S.D.N.Y. Oct. 18, 2007); *Dongbu Express Co. Ltd. v. Navios Corp.*, 944 F. Supp. 235 (S.D.N.Y. 1996).

In addition, SFS respectfully submits that the Court should order Everspeed to fully secure SFS' counterclaim and should not limit such counter-security to the amount of funds Plaintiff has been able to restrain thus far pursuant to its Rule B writ of attachment. *Pancoast*, 2008 U.S. Dist. LEXIS 4224; *Verton Navigation*, 1991 U.S. Dist. LEXIS 6722. For example, in *Pancoast*, plaintiff argued that it should be directed to give counter-security only up to the amount it restrained in support of its own claim. Judge Lynch rejected plaintiff's contention:

---

[2] SFS has utilized the same interest rate and estimated time period for the resolution of the Singapore arbitration that Everspeed used in its Verified Complaint in support of the Rule B writ of attachment (7.5% per annum, compounded quarterly over three years), thereby calculating the sum of $401,674.70 for interest on the principal counterclaim. On the advice of its Singapore solicitors, SFS has requested $150,000 and $45,000 for its estimated Singapore arbitration attorneys' fees and costs, respectively.

>The text of the rule itself largely disposes of one of Pancoast's objections. ***The rule provides that the plaintiff must give security "for damages demanded in the counterclaim,"*** and ***does not limit the countersecurity to the amount of security provided by the defendant to secure the plaintiff's claim.*** Pancoast suggests no persuasive reason to depart form the rule's general admonition. Ordinarily . . . the limitation suggested by Pancoast would make no sense. The rule seeks to provide security of recovery against the event of a successful claim, as a substitute for the actual seizure of vessels, which otherwise would be the only means to secure an eventual judgment in the far-flung and highly mobile world of maritime commerce. Had [defendant] filed first, it would surely have been entitled to a Rule B attachment fully securing its claim.

2008 U.S. Dist. LEXIS 4224, *2-3 (emphasis supplied).

Similarly here, the Court should not deny SFS the right to receive full counter-security from Everspeed on the ground that plaintiff has not yet completely secured its claim. Had SFS dashed to court and first obtained a Rule B attachment, like Everspeed did in this case, SFS undoubtedly would have been entitled to fully secure its overpayment-of-hire claim. As Judge Lynch reasoned, a litigant's right to full counter-security should not be prejudiced by the results of a race to the courthouse. *See also Verton Navigation*, 1991 U.S. Dist. LEXIS 6722 (ordering plaintiff to fully secure defendant's counterclaim even though plaintiff had not yet fully secured its claim).

Accordingly, SFS respectfully requests that its demand for counter-security should not be limited to the amount restrained thus far by Plaintiff on its own claim, and the Court should direct Everspeed to post counter-security to fully cover SFS' counterclaim, plus interest on the principal amount and the estimated legal fees and costs to be incurred in Singapore arbitration.

## POINT II

## SINGAPORE ARBITRATION PROCEEDINGS ON EVERSPEED'S ORIGINAL CLAIM MUST BE STAYED PENDING THE POSTING OF COUNTER-SECURITY

The Court's authority to require a plaintiff to provide Rule E(7) counter-security stems from the plaintiff's voluntary appearance before the Court and its voluntary invocation of the Admiralty Rules. Should the plaintiff fail to comply with an order to post counter-security, the Court has a wide arsenal of sanctions it may impose. *Voyager Shipholding Corp. v. Hanjin Shipping Co. Ltd.*, 539 F. Supp. 2d 688, 694 (S.D.N.Y. 2008). Rule E(7)(a)'s plain language requires that **"[p]roceedings on the original claim must** be stayed until [counter-security] is given unless the court directs otherwise" (emphasis supplied). Accordingly, Everspeed should be stayed from pursuing the merits of its original claim in Singapore arbitration until SFS' counterclaim and costs are fully secured.

In the matter presently before the Court, the parties did not intend that this Court adjudicate their commercial dispute on the merits. Moreover, Rule E(7)(a) specifically provides that "proceedings over the original claim" are to be stayed if the ordered counter-security is not given. By its terms, the Rule imposes no geographical limitations to the phrase "proceedings on the original claim" even though it was clear to the drafters that the attachment and arrest rules might well be expected to be invoked in aid of foreign arbitration/court proceedings. *See e.g. Sea Transport Contractors, Ltd. v. Industries Chemiques du Senegal*, 411 F. Supp. 2d 386 (S.D.N.Y. 2006) (holding that Rule B can be properly invoked in aid of foreign arbitration or litigation). Accordingly, this Court has the authority to order Everspeed, having voluntarily submitted to the Court's jurisdiction and reaped the benefits of Rule B by restraining

approximately $900,000 of SFS' funds, not to proceed with its original claim in Singapore arbitration until it posts the demanded counter-security.

In addition, a directive staying plaintiff's prosecution of its original claim ensures that the Rule B attachment process is not abused as a "leverage" tool but remains a valuable vehicle for a plaintiff to secure its claim if it intends in good faith to prosecute it in foreign arbitration. *Daeshin Shipping Co. Ltd. v. Meridian Bulk Carriers, Ltd.*, No.05-7173, 2005 U.S. Dist. LEXIS 22409, *11 (S.D.N.Y. Oct. 3, 2005). There, the Court stayed the plaintiff from proceeding on its original claim in London arbitration pending the posting of counter-security. In so ruling, the Court reasoned: "staying [plaintiff]'s arbitral claims will provide an incentive to post counter-security promptly so that the London arbitration that is in its earliest stages can proceed." *See also*, *Voyager Shipholding*, 539 F. Supp. 2d at 694 (recognizing the Court's power, *inter alia*, to stay plaintiff's foreign arbitration proceedings). This argument is the more compelling here, as Everspeed has not yet filed its Claim Submission to the Singapore arbitral tribunal even though it commenced arbitration in March 2009.

SFS respectfully submits that an order compelling Everspeed to post counter-security cannot be effectively enforced unless such order is accompanied by the stay required by Rule E(7)(a) prohibiting Everspeed from proceeding on the merits of its claim in the Singapore arbitration proceedings.

## POINT III

## THE COURT SHOULD VACATE THE ATTACHMENT AND DISMISS THE COMPLAINT IF EVERSPEED FAILS TO POST COUNTER-SECURITY AS DIRECTED

Should plaintiff fail to comply with an order to post counter-security, the Court has the authority to vacate Everspeed's attachment and Complaint. As Judge Lynch recognized in *Voyager Shipholding*:

> The Court has every expectation that Voyager, having invoked the authority of this Court, will comply with its orders. Should the Court's confidence be misplaced, it should be noted that enjoining Voyager from pressing its arbitration claims is not the only, or necessarily the most appropriate, remedy available to the Court. Voyager came to this Court in the first place not to litigate the merits of its disputes with Hanjin, but to obtain security for the claims it is pressing in another forum. That security is available to Voyager only on the terms provided in the Admiralty Rules, including the requirement that the claimant post countersecurity if appropriate. ***The Court has inherent power to enforce its orders against parties who have thus sought its aid. Should Voyager fail to comply with the countersecurity requirement of Rule E, which is a condition of the availability of the attachment provided by Rule B, the Court retains the power to vacate its order of attachment, and will not hesitate to utilize that power if necessary.***

539 F. Supp. 2d at 694 (emphasis supplied).

Accordingly, SFS respectfully requests that this Court should condition the maintenance of Everspeed's attachment upon the posting of counter-security such that if Everspeed fails to comply with the Court's Order, its attachment should be vacated. *Front Carriers,* 2007 U.S. Dist. LEXIS 85177, *15 (directing that attachment would be vacated if plaintiff did not give full countersecurity "within ten business days of the date of [the] Order"). Ten days should be adequate time for Everspeed to arrange such counter-security

## CONCLUSION

For all the foregoing reasons, SFS respectfully submits that the Court should grant the within motion. Accordingly, the Court should direct Everspeed to give counter-security in the amount of $2,205,198.36 within ten days of the Court's Order; should stay Everspeed from pursuing its main claim in the Singapore arbitral proceedings and any additional attachment in this action until such counter-security is provided; and should vacate Everspeed's attachment in the event that Everspeed does not comply with the Court's Order.

Dated: New York, New York
July 21, 2009

Respectfully submitted,

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Defendant
SKAARUP FORTUNE SHIPPING LTD.

By: _____
Eric E. Lenck
Manuel A. Molina
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax